WILLIAM C. E. O'BRIEN *vs.* BOSTON AND MAINE RAILROAD.

Suffolk.    March 17, 1911. — May 18, 1911.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability, Railroad.

Where, at the trial of an action under R. L. c. 106, § 71, cl. 1, against a railroad corporation by a freight brakeman in its employ, to recover for personal injuries caused by the sudden unwinding of a brake wheel due to the slipping of a dog which held the ratchet as he was winding up the brake, there is evidence that the ratchet was defective in that one tooth was not cut in so deep as the others, which would cause the dog to be forced out and not to hold much pressure, and the plaintiff's description of the manner in which the accident happened might be found to have been more consistent with the presence of a defective tooth in the ratchet than with any other cause, and there also is evidence that such ratchets are in common use on railroads, it is for the jury to say whether, in view of the way in which such ratchets are made and of their common use on railroads, the short tooth constituted a defect which the defendant in the exercise of due care and diligence ought to have discovered and remedied.

If a freight brakeman in the employ of a railroad company is injured because of a defect, consisting of a short tooth in the ratchet on the braking apparatus of a freight car, the mere fact that such ratchets are in common use will not excuse the defendant from liability under R. L. c. 106, § 71, cl. 1, if it does not appear that the brakeman assumed the risk of the injury.

If, at the trial of an action under R. L. c. 106, § 71, cl. 1, against a railroad corporation by a freight brakeman in its employ, to recover for personal injuries caused by the sudden unwinding of a brake wheel, caused by the slipping of a dog

which held the ratchet as the plaintiff was winding up the brake, there is evidence that the ratchet was defective in that one tooth was not cut in so deep as the others, which would cause the dog to be forced out and not to hold much pressure, and the plaintiff testifies that he did not see any defect in the ratchet or dog before he began using them, and there is further evidence that the plaintiff's duties were those of a member of a car-shifting crew, which required him to jump on and off cars in motion and to ride cars which had been "kicked" off from trains in train yards until, by braking them, he brought them to a standstill, the question, whether the plaintiff was in the exercise of due care, is for the jury.

If, at the trial of an action under R. L. c. 106, § 71, cl. 1, against a railroad corporation by a freight brakeman in its employ, to recover for personal injuries caused by the sudden unwinding of a brake wheel, caused by the slipping of a dog which held the ratchet as the plaintiff was winding up the brake, there is evidence that the ratchet was defective in that one tooth was not cut in so deep as the others, which would cause the dog to be forced out and not to hold much pressure, and the plaintiff testifies that he did not see any defect in the ratchet or dog before he began using them, and there is further evidence that the plaintiff's duties were those of a member of a car-shifting crew, which required him to jump on and off cars in motion and to ride cars which had been "kicked" off from trains in train yards until, by braking them, he brought them to a standstill, and it appears that ratchets with such short teeth were in common use on railroads, the questions, whether the plaintiff assumed the risk of the injury he received because he knew that the ratchet was or might be defective or because a defective ratchet was so common and well known as to constitute one of the obvious risks of the employment, or whether in the performance of his duties he properly could rely upon the assumption that the brake was in a condition to enable him to do his work in safety, and, if so, to what extent he was justified in acting upon such reliance, all were for the jury.

If a freight brakeman, who in the course of his duties is upon a loaded freight car which has been "kicked" from a train in its course over switches to a position in a freight yard, and whose duty it is by use of the hand brake to bring the car to a standstill at the proper point, as he starts to use the brake for the first time observes that it is defective, so that he has before him the alternative of attempting to use it, employing such care as he is able to under the circumstances, or of abandoning the car to its fate with the certainty that it would come into collision with other cars, *it is doubtful* whether it can be said as matter of law that the brakeman, in deciding to use the brake, would assume the risk of injury therefrom. By MORTON, J.

TORT for personal injuries received while in the employ of the defendant as a brakeman and alleged to have been caused by a defective ratchet and dog upon the braking appliance of a freight car which in the course of his duties the plaintiff was attempting to stop with the brake. Writ dated January 9, 1907.

In the Superior Court the case was tried before *Brown*, J. The plaintiff testified that at the time of the accident he had worked for the defendant for five years continuously as a freight brakeman, and that at the time he was injured he was working on

a shifting crew.   It was his duty among other things to ride cars that had been kicked off from the engine to their place of destination on side tracks, to make up freight trains and distribute cars, and to do general shifting work.   This shifting work required him to jump on to moving cars that had been kicked off by the engine.   Sometimes he would have one car, and at other times four or five to take care of.

On June 14, 1906, at the time of the accident, he with others of the shifting crew was just getting through his morning's work.   The engine was shifting out a string of cars, that is, hauling them up over switches and " kicking " them down to the different tracks.   " We had a string of seven or eight cars.   As the first car of the string came down I was on top of it.   The car . . . was loaded, and I rode on the top of it from the North Farm to the new yard, something like one third of a mile to where I got injured.   Where I got injured was in the new yard near track No. 6.   The side tracks lead off the main line tracks. The car was cut off and was going down to track No. 8.   . . I was setting up a brake at the time of the accident.   There is a small platform about a foot wide some two feet below the roof of the car on which the brakeman stands as he sets the brake up.   The brake shaft starts at the bottom part of the car and goes right clean up the whole length of the car to the top, and there is a brake wheel on top of the shaft.   About two feet below the top of the roof of the car on the shaft there is a dog and a ratchet, which is used to hold the brake.   This dog and ratchet is right on top of the small platform.   The ratchet is a round piece of iron with teeth cut in it, and the dog is a piece of iron, shaped something like the letter S, which fits into the teeth when you set the brake up, to hold the dog and hold the car. When you were setting the brake wheel up for the purpose of stopping the car the brakeman puts his foot up against the dog so that it will catch into the teeth of the ratchet, and this holds the brake.   The shoe against the wheels of the car is attached to this brake by a chain which runs from the shoe to the shaft, and every time you pull on that brake it tightens the shoe against the wheels, and the dog fitting into the ratchet holds it."

The plaintiff's description of the manner in which the accident happened is stated in the opinion.   He also testified that,

as he looked at the dog and ratchet before getting upon the platform, he saw nothing wrong with them.

The defendant produced what it alleged was the brake whose defect the plaintiff contended caused his injury. It was examined on behalf of the plaintiff by an experienced brakeman, who testified that there was one tooth upon the ratchet which was defective by reason of the fact that it was not cut in so deep as the others, so that it had a tendency to force the dog out of place and would not hold under pressure.

The car with the alleged defective brake was the property of the Wabash Railroad. It had been received by the defendant on June 7, 1906, from the Delaware and Hudson River Railroad Company, when it was loaded with automobiles for Beverly Farms, Massachusetts, where it was unloaded on June 12. Thereafter, up to the time of the accident on June 14, it was used by the defendant for a trip to Sanbornville, New Hampshire, from whence it was returning, loaded with ice, when the plaintiff was injured.

The disposition of the case in the trial court is stated in the opinion.

*S. A. Fuller,* (*J. W. Vaughan,* with him,) for the plaintiff.

*H. F. Hurlburt, Jr.,* for the defendant.

MORTON, J. This is an action of tort to recover damages for personal injuries received by the plaintiff on June 14, 1906, while in the employ of the defendant as a freight brakeman. At the close of the plaintiff's evidence the trial judge directed a verdict for the defendant and reported the case to this court. If the judge was wrong in directing a verdict for the defendant it is agreed that judgment may be entered for the plaintiff in the amount stipulated in writing by the parties; otherwise judgment is to be entered upon the verdict.

We think that the ruling was wrong. There was evidence tending to show that there was a defect in the ratchet so that the dog which held the brake as it was wound up was liable to slip, and did slip, thereby causing the accident complained of. One witness called by the plaintiff testified that the ratchet was defective and that it had a tendency to throw the dog out and that it would not hold under pressure. The plaintiff's description of the manner in which the accident happened also could

have been found to be more consistent with the presence of a defective tooth in the ratchet than with any other cause. He testified amongst other things that he was winding up the brake and had his foot against the dog, meaning, it could be fairly inferred, that he was pressing the dog into the ratchet, and had got the brake "pretty well tightened up," "pretty near up to the limit," and looked round over his shoulder to see where the cars ahead of him were, when "the dog gave away from me, and as the dog gave away from me the brake went off, it unwound, and down I went, it went off just as quick as that," illustrating by clapping his hands. The defendant contends that the plaintiff, as he turned to look at the cars that were ahead of him, may have moved his foot and thereby released the dog, or the joggling of the car as it went over the switch may have thrown out the dog, or that in winding up the brake chain one part of the chain wound upon another and then may have slipped off, causing the sudden unwinding; and that it is impossible therefore to tell what the cause of the accident was. All these things were matters proper for the consideration of the jury in passing upon the question whether the accident was due, as contended by the plaintiff, to a defect in the ratchet or to some other cause for which the defendant was not liable; but they did not justify a ruling that there was no defect in the ratchet, and that the accident was not due to that. It was for the jury to say whether in view of the way in which ratchets such as this were made and of their common use on other railroads, the short tooth complained of, if there was one, constituted a defect for which the defendant was liable. If it was a defect, the fact that such ratchets were in common use would not excuse the defendant if it did not appear that the plaintiff had assumed the risk. So also it was a question for the jury whether, if it were a defect, it ought in the exercise of the care and diligence required of it to have been discovered and remedied by the defendant.

It could not have been ruled as matter of law that the plaintiff was not in the exercise of due care, or that he assumed the risk. It was for the jury to say whether, taking into account the nature of his duties and of the business in which he was engaged, he exercised the degree of care which under the circumstances was required of him. So as to assumption of the risk, it was for

the jury to say whether he knew that the ratchet was or might be defective and, if he did, whether he assumed the risk of it, and whether a defective ratchet was so common and well known as to constitute one of the obvious risks of the employment, or whether in the performance of his duties he could properly rely upon the assumption that the brake was in a condition to enable him to do his work in safety, and if so to what extent he was justified in acting upon such reliance.   Even if in the instant of stepping down upon the platform to wind up the brake he had discovered the defect and had before him the alternative of attempting to wind up the brake, using such care as he was able to use under the circumstances, or of abandoning the car to its fate with the certainty that it would collide with the cars ahead, it is doubtful, to say the least, whether it could have been ruled as matter of law that he would have assumed the risk arising from the defective brake.   That question however is not now before us.

We have not found it necessary to consider the questions of evidence.

In accordance with the report the entry must be: Judgment for the plaintiff in the amount agreed upon in writing by the parties.

*So ordered.*